IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI

UNITED STATES OF AMERICA

v.  CRIMINAL NO. 1:13-CR-00063-GHD-DAS-1

THOMAS L. KIRK  DEFENDANT

## MEMORANDUM OPINION GRANTING IN PART AND DENYING IN PART APPELLANT'S MOTION TO APPEAL MAGISTRATE JUDGE'S DECISION

Appellant Thomas L. Kirk ("Appellant") timely appeals his convictions, following a nonjury trial before Magistrate Judge David A. Sanders on March 19, 2013, for operating a motor vehicle under the influence of alcohol and/or drugs on the Natchez Trace Parkway (in violation of 36 C.F.R. § 4.23(a)(1)) and careless driving (in violation of 36 C.F.R. § 4.22). *See* FED. R. CRIM. P. 58(g)(2)(B). Upon due consideration, the Court finds that Appellant's motion to appeal [7, 8, & 12][1] should be granted insofar as the Court finds that there was not sufficient evidence to sustain the DUI conviction, but denied insofar as the Court finds that there was sufficient evidence to support the careless driving conviction.

When reviewing a conviction by a magistrate judge, "[t]he scope of the appeal is the same as in an appeal to the court of appeals from a judgment entered by a district judge" and "[t]he defendant is not entitled to a trial de novo by a district judge." FED. R. CRIM. P. 58(g)(2)(D). An appellate court reviews the trial court's evidentiary determinations for abuse of discretion. *United States v. Sanders*, 343 F.3d 511, 517 (5th Cir. 2003) (citing *United States v. Townsend*, 31 F.3d 262, 268 (5th Cir. 1994)). "The standard of review for sufficiency of the evidence is 'whether, after reviewing the evidence in the light most favorable to the prosecution,

---

[1] Appellant twice filed an identical motion to appeal his convictions [7 & 12], and his memorandum brief in support of the motion is also designated as a motion to appeal his convictions [8].

any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Bellew*, 369 F.3d 450, 452 (5th Cir. 2004) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)); *see also United States v. Mitchell*, 777 F.2d 248, 260–61 (5th Cir. 1985). "The evidence . . . must be considered in the light most favorable to the government, giving the government the benefit of all reasonable inferences and credibility choices." *United States v. Jackson*, 273 F. App'x 372, 373 (5th Cir. 2008) (per curiam) (quoting *United States v. Inocencio*, 40 F.3d 716, 724 (5th Cir. 1994)). "It is not necessary that the evidence exclude every reasonable hypothesis of innocence." *Id.* (quoting *United States v. Espinoza-Seanez*, 862 F.2d 526, 536 (5th Cir. 1988)). In reviewing the arguments and record in the case *sub judice* under this standard, the Court finds that the evidence was not sufficient to support Appellant's DUI conviction, but was sufficient to support the careless driving conviction. *See United States v. El-Zoubi*, 993 F.2d 442, 445 (5th Cir. 1993); *United States v. Ybarra*, 70 F.3d 362, 364 (5th Cir. 1995), *cert. denied*, 116 S. Ct. 1582 (1996).

On December 14, 2011, while exercising his duties as a law enforcement officer on the Natchez Trace Parkway, United States Park Ranger Dan Whitcomb ("Whitcomb") observed a motor vehicle without a properly illuminated license plate. He then noticed the driver of the vehicle brake erratically approximately four times while exiting onto the Cliff Gookin Boulevard exit ramp, fail to exhibit a turn signal, cross over the center line of the ramp before drifting back across the lane as he approached a stop sign, proceed through the stop sign without stopping, and enter traffic on Cliff Gookin Boulevard. At this point, Whitcomb initiated a traffic stop. Upon approaching the vehicle, Whitcomb identified the driver of the vehicle by verbal affirmation as Appellant. Whitcomb asked Appellant for his driver's license, but Appellant informed him that he did not have his wallet with him. Whitcomb then asked the driver for his name. When

Appellant replied "Thomas," Whitcomb waited a moment to see if Appellant would state his full name; when Appellant did not, Whitcomb instructed Appellant that he needed Appellant's full name. Appellant stated his full name. Whitcomb observed that Appellant's eyes were bloodshot and apparently noticed the odor of an alcoholic beverage inside the vehicle.

Whitcomb asked Appellant how much alcohol he had consumed, and Appellant stated that he had consumed two alcoholic drinks with dinner that evening. Whitcomb noted that Appellant stumbled over a word as he spoke. Whitcomb then conducted a verbal test wherein he asked Appellant to recite the alphabet from "C" to "V." Despite two opportunities to do so, Appellant was unable to recite the alphabet correctly (Appellant having recited "C" through "P" in the first recitation, and having incorrectly inserted "U" after "Q" in the second recitation). Based on Whitcomb's observations and Appellant's statements, Whitcomb suspected that Appellant was under the influence of alcohol and/or drugs. Whitcomb asked Appellant to exit the vehicle and asked Appellant whether he had any physical impairments. Appellant responded that he had pain in his neck, but that he did not believe it was a physical impairment. Whitcomb asked Appellant if he took medication for the problem, and Appellant informed Whitcomb that he took prescription Lortab for the pain three times a day and that he had taken two doses that day—the more recent dose that evening. Upon being asked whether he wore glasses or contacts, Appellant informed Whitcomb that he did not.

At that point, Whitcomb began to perform standardized field sobriety tests. First, Whitcomb conducted the horizontal gaze nystagmus ("HGN") test. According to National Highway Traffic Safety Administration ("NHTSA") studies, 4 or more out of 6 clues of impairment on this test indicate a 77% probability that the subject's blood alcohol level is greater

than .10. Whitcomb observed 3 out of 6 clues of impairment in Appellant's eyes.[2]

Second, Whitcomb conducted the walk-and-turn test. According to NHTSA studies, 2 or more out of 8 clues of impairment indicate a 68% probability that the subject's blood alcohol level is greater than .10. Whitcomb observed 3 out of 8 clues of impairment, specifically: Appellant raised his arms greater than six inches from his sides several times during the walking phase (one clue), performed an improper turn by pivoting on both feet (one clue), and failed to step heel to toe by greater than one-half inch while walking (one clue).

Third, Whitcomb conducted the one-leg-stand test. According to NHTSA studies, 2 or more out of 4 clues of impairment or failure to complete this test indicate a 65% probability that the subject's blood alcohol level is greater than .10. Whitcomb observed 3 out of 4 clues of impairment, specifically: Appellant swayed while balancing during the balancing and counting phase (one clue), raised his arms greater than six inches from his sides several times during the balancing and counting phase (one clue), and hopped on one foot during the balancing and counting phase (one clue). Whitcomb also noted that Appellant was hopping out toward the roadway. Whitcomb terminated the test at this point due to Appellant's lack of balance becoming a safety concern. Appellant claims that he was 50 pounds overweight at that time. Whitcomb testified that Appellant did not appear to be overweight.[3]

After conducting the field sobriety tests, Whitcomb offered Appellant the preliminary breathalyzer test. Despite Appellant's admission that he had consumed two alcoholic drinks with

---

[2] The Court notes that in making his ruling, Judge Sanders did not rely on the HGN test as evidence of intoxication, because he deemed the test to be invalid as administered with inconsistent findings. The Court finds that Judge Sanders' observation was well taken and also does not rely on the HGN test as evidence of Appellant's intoxication.

[3] Judge Sanders noted on the record at the trial that Appellant did not appear to be overweight but that he appeared to have a fairly standard build.

4

dinner, the result was .000. Whitcomb was surprised by the result. Based on Appellant's overall test results and statements and Whitcomb's observations and experience, Whitcomb determined that Appellant was not driving under the influence of alcohol.

However, Whitcomb testified that based on the totality of the circumstances and the result of his investigation, he had probable cause to believe that Appellant was under the influence of an intoxicating substance and was unable to safely operate his vehicle, and thus that Whitcomb had probable cause to arrest Appellant on charges of DUI (drugs) and careless driving. Whitcomb based this belief on several indicators he had observed during the stop and administration of the field sobriety tests, including Appellant's poor balance, difficulty dividing attention, poor performance including slurred speech on the verbal alphabet recitation test, and statements that he had taken two Lortabs that day (including one that evening) and consumed two alcoholic drinks with dinner. Accordingly, Whitcomb transported Appellant to North Mississippi Medical Center for a blood draw after obtaining Appellant's consent to do so. The medical records from that hospital visit state that Appellant was awake, cooperative, and alert. *See* North Miss. Med. Ctr. Med. Chart [8-1] at 17.

The blood test revealed the presence of both Lortab (hydrocodone) and a trace amount of cocaine in Appellant's blood. During the trial, Judge Sanders heard expert testimony from T.J. Graham, a forensic scientist at the Mississippi Crime Laboratory, who testified that the amount of cocaine found in Appellant's blood was 29 nanograms, a very small amount (only 9 nanograms above the crime laboratory's cutoff) and already metabolized, and thus had no effect on Appellant on the night in question. Graham also testified that the Lortab was only found in a qualitative analysis and could not be quantified; thus, the amount of Lortab that Appellant had

ingested is not ascertainable from the blood report.[4]

Finally, Judge Sanders heard testimony from Appellant, who testified that on the night in question: **(1)** it was difficult to see to drive with Whitcomb's bright lights behind him and no street lights to help him to see in the darkness; **(2)** he braked in accordance with his training as a truck driver to "tap," "tap," "brake," and not erratically as Whitcomb contends; **(3)** as the DVD of the traffic stop confirms, Appellant had told Whitcomb on the night in question that he was not good at driving at night; **(4)** as the DVD of the traffic stop confirms, Appellant had told Whitcomb on the night in question that he had poor balance; **(5)** Appellant failed the standardized field sobriety tests because he was 50 pounds overweight; **(6)** Appellant was prescribed three doses of Lortab a day (a fact uncontested by the Government); and **(7)** the label on the Lortab bottle indicates that Lortab "may cause drowsiness and dizziness and intensified effects by alcohol are possible" (DVD position 4:20:30).

Given all of the evidence, Judge Sanders found that Whitcomb's observations during the traffic stop and field sobriety tests established probable cause to arrest Appellant for driving under the influence and careless driving, and that the evidence presented in trial supported a finding that Appellant was guilty of operating a motor vehicle while under the influence of drugs and careless driving. Judge Sanders stated into the record:

> The Defendant's evidence that gave the Court so much pause was, first-off, certainly, the Defendant here—his portable breathalyzer showed .000. I understand that was disconcerting for [Whitcomb]. That is obviously evidence to support a defense in this case, although the Defendant has been charged under the regulation that is a DUI with respect to alcohol or drugs. Nevertheless, that was

---

[4] Judge Sanders also heard lay testimony from Mitchel Keyes, an independent contractor for the Mississippi Crime Laboratory for specimen collection and specimen testing. Judge Sanders found that Keyes' experience in collecting blood and sending blood samples to laboratories did not allow Keyes to give expert testimony as to the presence of drugs in the blood.

evidence that gave the Court pause, as well.

. . .

For all of those reasons that [Defendant's attorney] brought up so clearly on cross-examination, I find that the HGN test was essentially invalid.

Another thing that gave the Court pause: there was cocaine, or at least cocaine metabolites, found in the Defendant's blood. And I do want to make this point, folks: [Defendant's attorney] made the point a number of times that [Defendant] is a good man; I don't doubt that in the slightest. I don't think anybody else in the room does. He's repeatedly described as a law-abiding, good man. I don't know if the cocaine metabolites in his blood were consistent with law-abiding, but certainly, I don't doubt that [Defendant] is a good man. As to the Government's proof, however, the blood test showed opiates in the blood consistent with someone taking Lortab, and the Defendant, of course, himself admitted to having taken two Lortabs <u>that day</u>. He also admitted to having two drinks. We all know there was no alcohol found, or no presence of alcohol from the portable blood test, but the Court did hear testimony from the Defendant reading from the bottle that alcohol and Lortab combined are a terrible idea, particularly when you plan to get behind the wheel of a car.

The walk-and-turn test: [Whitcomb] testified that he showed positive results on 3 of 8 of those tests, but the Court watched it on the video and watched the Defendant waving his arms—or holding his arms out—the whole time. Candidly, I don't know how many walk-and-turn tests I've now watched on a video. I don't know how many [Defendant's attorney] has had us watch; plenty. But this was about as bad a walk-and-turn test as the Court has seen, and the Court simply can't set a precedent that a defendant saying that he has poor coordination would be enough to defeat what is held uniformly as a validated test.

The one-leg-stand [test], again, about as bad as the Court has seen. [Whitcomb] finally had to stop before the Defendant hopped, or fell, into traffic. Defense counsel did argue that the Defendant was over 50 pounds overweight; there was no evidence of that other than this American Medical Association document that the Court couldn't take judicial notice of. The Court, again, saw the video and like [Whitcomb], frankly, the Defendant—for what it's worth, I don't know that it's worth anything when the Court says—that

> the Defendant doesn't appear to be 50 pounds overweight. He does have a big frame. He frankly just looks like a fairly standard build.
>
> . . .
>
> Again, the defense counsel listed numerous characteristics that apparently are characteristics consistent with analgesics, such as Lortab, I believe, but there was nothing as to that in evidence. I don't know that droopy eyelids or a number of ones that [Defendant's attorney] brought out that [Whitcomb] didn't ask about. I understand that defense counsel was suggesting that those were characteristics of someone taking a drug like Lortab, but I didn't have any evidence to support that that was exactly—that those were characteristics. So, for all those reasons, very specifically, the fact that the Defendant admitted that he took 2 Lortabs, the fact that he did so poorly on the walk-and-turn and the one-leg-stand, and the fact that an extremely experienced park ranger, who was there on the scene, believed him to be incapable of safe operation, in the Court's mind, that is more than enough to find that the Government proved this DUI charge beyond a reasonable doubt.
>
> As to the careless driving, I went back in there, pulled up the regulation charge—it's 36 C.F.R. [§] 4.22—under that, the following are prohibited under (b)(1): operating a motor vehicle without due care is one of the elements. There are a number of other ways in which this could be charged. That specific one, though, I find that the Government has proved that the Defendant operated a motor vehicle without due care beyond a reasonable doubt. The Court watched the video and saw the Defendant not stop at the stop sign as he pulled out onto Cliff Gookin, among other things that showed in the video and that [Whitcomb] testified to.

As stated, Appellant now challenges the sufficiency of the evidence to support his DUI and careless driving convictions. Appellant requests that Judge Sanders' decision be reversed and rendered or that a new trial be ordered. The Court will examine each conviction in turn.

### (1) DUI Conviction

Appellant was convicted of a DUI under 36 C.F.R. § 4.23(a)(1), which provides:

8

"Operating or being in actual physical control of a motor vehicle is prohibited while: [u]nder the influence of alcohol, or a drug, or drugs, or any combination thereof, to a degree that renders the operator incapable of safe operation[.]" Section 4.23(a) applies even if the driver is legally prescribed the drug in question. 36 C.F.R. § 4.23(b). Under 36 C.F.R. 4.23(d):

> The results of chemical or other quantitative tests are intended to supplement the elements of probable cause used as the basis for the arrest of an operator charged with a violation of paragraph (a)(1) of this section. If the alcohol concentration in the operator's blood or breath at the time of testing is less than alcohol concentrations specified in paragraph (a)(2) of this section, this fact does not give rise to any presumption that the operator is or is not under the influence of alcohol.

Appellant argues that insufficient evidence supported his DUI conviction because the Government failed to prove beyond a reasonable doubt that alcohol, Lortab, or a combination of the two rendered Appellant incapable of safely operating his vehicle on the night in question. Specifically, Appellant maintains the following: **(1)** it is legal to consume alcohol, Lortab, or any combination thereof and drive, so long as the person is not over the legal limit or impaired to the degree that they cannot safely operate their vehicle; **(2)** no chemical test placed Appellant over the legal limit of alcohol; **(3)** no evidence showed any quantification of Lortab in Appellant's blood, as the blood test did not quantify the amount of Lortab in Appellant's blood and no evidence confirms that Appellant had ingested more than the prescribed amount of Lortab on the night in question; **(4)** the Government offered no evidence that a combination of alcohol and Lortab rendered Appellant incapable of safely operating his vehicle on the night in question; **(5)** Appellant's driving habits and demeanor that night demonstrated that he was not impaired; **(6)** Appellant failed his walk-and-turn test and one-leg-stand test because he was 50 pounds overweight, as confirmed by the American Medical Association weight chart Appellant

9

attempted to have Judge Sanders take judicial notice of but which request was refused (attached as Exhibit F to Appellant's Motion [8-1] at 12); **(7)** persons 50 pounds or more overweight may have trouble performing standardized field sobriety tests, as noted in NHTSA studies (attached as Exhibit E to Appellant's Motion [8-1] at 11 ("people who are overweight by 50 or more pounds had difficulty performing [the one-leg-stand] test")); and **(8)** overall, the Government failed to prove his DUI conviction beyond a reasonable doubt.

Appellant cites in support of his position the case *United States v. Davis*, 261 F. Supp. 2d 343 (D. Md. 2003), wherein an appellant challenged his DUI conviction, and the district court overturned his DUI conviction based on insufficient evidence to support the same. *Id.* at 347–48. In *Davis*, the defendant, who was charged with violating 36 C.F.R. § 4.23(a)(1), had admitted to using marijuana two weeks prior to his arrest. *Id.* at 346. The arresting officer did not administer standardized field sobriety tests but instead—based on defendant's "glassy eyes," conveyance of an absence of knowledge, incoherence and inability to speak normally, lack of alertness, apparent disorientation, and bad driving—transported the defendant directly to the hospital for a blood draw, which revealed only that marijuana was present in an unspecified concentration. *Id.* at 347. The district court ruled that the Government failed to satisfy its burden of proving that the defendant's driving was affected by alcohol, a drug, drugs, or any combination thereof to a degree that rendered the operator incapable of safe operation. *Id.* Appellant argues that unlike the defendant in *Davis*, Appellant was undisputedly alert, awake, and cooperative during his blood draw, and that due to the Government's lack of proof that alcohol, Lortab, or any combination thereof rendered him incapable of safely operating his vehicle, this Court should reverse Judge Sanders' ruling.

After reviewing the record, including the DVD recording of the traffic stop and the field

sobriety tests, the Court is of the opinion that although the Government has proved that Whitcomb had probable cause to arrest Appellant on a DUI charge, the evidence presented at trial does not support a finding that Appellant was guilty of driving under the influence in violation of 36 C.F.R. § 4.23(a)(1). The burden of proof to sustain a conviction in a criminal case requires a determination that the defendant is guilty of every element of the crime charged beyond a reasonable doubt. *United States v. Gaudin*, 515 U.S. 506, 510, 115 S. Ct. 2310, 132 L. Ed. 2d 444 (1995); *Rigby v. State*, 826 So. 2d 694, 700 (Miss. 2002). Although it is undisputed that Appellant was operating his motor vehicle on the night in question (the first element of the offense), there is not sufficient evidence to support the remaining elements of the offense, specifically, that Appellant was driving under the influence of alcohol, a drug or drugs, or any combination thereof, to a degree that rendered Appellant incapable of safe operating his vehicle. The result of Appellant's breathalyzer test was .000, and the result of Appellant's blood test at the hospital similarly does not support a finding that Appellant was driving under the influence of an intoxicating substance. The Court has also viewed the conversations between Whitcomb and Appellant during the traffic stop and subsequent arrest and finds that the same show that Appellant was coherent. Overall, the Court finds that after reviewing the evidence in the light most favorable to the prosecution, there was not sufficient evidence to uphold the Appellant's DUI conviction, and thus that Appellant's conviction for driving under the influence of an intoxicating substance in violation of 36 C.F.R. § 4.23(a)(1) should be overruled.

**(2) Careless Driving Conviction**

Appellant was also convicted of careless driving under 36 C.F.R. § 4.22, which is "less serious than reckless driving" and is "defined by State law." 36 C.F.R. § 4.22(a). "Operating a motor vehicle without due care" is prohibited. 36 C.F.R. § 4.22(b)(1). Appellant argues that the

11

Government's only proof of careless driving was that Appellant braked four times before turning in an area that undisputedly has no street lights or lamps to illuminate the roadway and that he turned with a wide radius, coming across the center line of the road. Appellant argues that there is insufficient evidence to support a careless driving conviction and that the same should be reversed. The Court finds this argument is not well taken.

The Government successfully proved the careless driving conviction by demonstrating through Whitcomb's testimony and narrative sheet that Appellant operated his vehicle without due care by erratically braking, failing to properly signal the turn, crossing over the center line on the exit ramp while making the turn, and failing to come to a full stop at the stop sign on the exit ramp. The fact that the Cliff Gookin Boulevard exit ramp is not illuminated only strengthens the Government's argument that Appellant failed to exercise due care in operating his car by erratically braking, failing to signal a turn, crossing over the center line, and not coming to a complete stop at the stop sign. Overall, the Court finds that sufficient evidence supported Appellant's careless driving conviction, and thus that Appellant's conviction for careless driving under 36 C.F.R. § 4.22 should be upheld.

### Conclusion

In sum, Appellant's motion to appeal the ruling of United States Magistrate Judge David A. Sanders [7, 8, & 12] is GRANTED IN PART AND DENIED IN PART, and Judge Sanders' ruling is AFFIRMED IN PART AND OVERRULED IN PART. The Court finds that the evidence produced at Appellant's trial, when taken in the light most favorable to the Government, provides the necessary support for a rational trier of fact to find Appellant guilty beyond a reasonable doubt of careless driving in violation of 36 C.F.R. § 4.22. However, the evidence produced at Appellant's trial, when taken in the light most favorable to the

Government, does not provide the necessary support for a rational trier of fact to find Appellant guilty beyond a reasonable doubt of driving under the influence in violation of 36 C.F.R. § 4.23(a)(1).

The cause is REMANDED to the United States Magistrate Judge to assess an appropriate punishment for the conviction of careless driving in violation of 36 C.F.R. § 4.22.

A separate order in accordance shall issue this day.

THIS, the 21st day of October, 2013.

_____
SENIOR JUDGE